IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| JEAN PIERRE | § | |
| | § | |
| VS. | § | ACTION NO. 4:03-CV-139-Y |
| | § | |
| POTOMAC INSURANCE COMPANY OF | § | |
| ILLINOIS | § | |

<u>ORDER GRANTING THIRD MOTION FOR SUMMARY JUDGMENT</u>

Pending before the Court is Defendant's Third Motion for Summary Judgment [document number 239]. After review of the motion, related briefs, and applicable law, the Court concludes that the motion should be and hereby is GRANTED.

Plaintiff Jean Pierre is the owner of the Campo Verde shopping center located in Arlington, Texas. From April 1, 1999, to April 1, 2002, the property was insured by defendant Potomac Insurance Company of Illinois ("Potomac"). This lawsuit arises from two insurance claims Pierre made regarding the property. The first claim was for damage allegedly resulting from a wind and hail storm in March 2000. The second claim was for water and mold damage allegedly sustained as a result of broken water pipes, which damage Pierre discovered in May 2001.

The Court previously granted summary judgment in favor of Potomac on Pierre's claims arising from the wind and hail storm. At the same time, the Court ordered that the parties engage in the appraisal process required by their contract with respect to the water and mold damage claim. The appraisers determined that the replacement cost for that damage was $249,734.28, with an actual cash value of

$236,004.16. After deducting the $1,000 deductible provided for in the contract plus $50,490 that had already been paid to Pierre, Potomac paid Pierre an additional $184,514.16 to satisfy the appraisers' award on the claim for water and mold damage.

Unsatisfied, Pierre moved to reopen this suit and pursue his claims, which motion the Court granted. Potomac filed a second summary-judgment motion, which was denied due to the existence of issues of fact. With leave of Court, Potomac has now filed a third summary-judgment motion, contending for the first time that the fungus exclusion in the insurance policy bars Pierre's claims.

The insurance contract between the parties provides in pertinent part as follows:

> B. Exclusions
>
>  . . . .
>
>   2. We will not pay for loss or damage caused by or resulting from any of the following:
>
>     . . . .
>
>     d. **Other Types of Losses:**
>
>       . . . .
>
>       (2) . . . fungus . . .
>
>     But if an excluded cause of loss that is listed in **B.2.d.(1)** through **(7)** results in a "**specified cause of loss**" or building glass breakage, we will pay for the loss or damage caused by that "**specified cause of loss**" or building glass breakage.

(Potomac's App. [doc. 83] at 66, 68.) "Specified cause of loss" is defined in the policy to include "water damage." (*Id.* at 73.)

Thus, the plain terms of the parties' insurance contract exclude

coverage for damage resulting from fungus. Mold is merely a type of fungus. *See* Webster's Third New Int'l Dictionary 1454 (1986) (defining "mold" as "1: a superficial often woolly growth produced on various forms of organic matter esp. when damp or decaying and on living organisms 2: a fungus esp. of the order Mucorales that produces mold"); *Lexington Ins. Co. v. Unity/Waterford-Fair Oaks, Ltd.*, 2002 WL 356756 (N.D. Tex. 2002) (Fitzwater, J.) (concluding that mold-damage claim was excluded under policy's pollutant exclusion, which included "fungi"). As a result, the Court concludes that the policy excludes coverage for any damages resulting from mold. *See Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 747 (Tex. 2006) (concluding that policy exclusion providing that the insurance company did not cover loss caused by "mold or other fungi" was unambiguous and excluded all damages caused by mold, even where the mold resulted from water damage that was covered under the policy).

Potomac's summary-judgment motion contends that all of Pierre's remaining damages are the result of fungus. The only evidence Pierre submits to counter this contention is his own affidavit. In his affidavit, Pierre avers as follows:

> The claim involves both water damage and mold damage. The genesis of the claim resulted from two burst plumbing pipes, one in Suite 2110B and one in Suite 2114E. As [a] result of the burst plumbing pipes, water leaked out on the floor throughout Suites 2110B and 2114E. The water ruined the carpet in these suites, and also damaged the bottom of the sheetrock walls and doors. The water also spread into the adjoining suites, including Suites 2110A, 2110C and 2110D, causing damage to carpets, sheetrock and doors. **All of this water damage occurred before any mold appeared. The mold did not start showing up until after all of the damage caused solely by the water occurred.**

(Pierre's App. [doc. 242] at 5, ¶ 6 (emphasis added).)

As noted by Potomac, however, Pierre provided contrary testimony in his prior examination under oath given long ago (and much closer in time to the incident in question) on October 14, 2002:

> Q: Now, as far as the damage that you're submitting to Potomac in this particular instance--First off, tell me how you discovered the damage.
>
> A. I was showing unit number 2110-B, as in boy, to a potential client, potential tenant I should say. And at that time, when we entered the space, we were hearing the noise. We walked through and we could see the dark mold towards the end. And we discovered that pipe that had burst and was gushing out water all throughout the bathroom in the back, all walls being blackened by mold throughout the bathroom area and other areas; the walls and the doors, that they were covered with fungus.

(Potomac's Supp. App. to Mot. to Strike [doc. 252] at 46.) Pierre also testified that subsequently the tenant in an adjacent property, unit 2110-A "claimed that he had been seeing black mold. And he basically broke his lease and vacated the premises with a sign at the door saying 'black mold exists.'" (*Id.* at 47.)

The Fifth Circuit Court of Appeals has made it clear that a party cannot defeat summary judgment by changing his prior sworn testimony without explanation. See *S.W.S. Erectors, Inc. v. Infax, Inc.* 72 F.3d 489, 495 (5th Cir. 1996) ("It is well settled that this court does not allow a party to defeat a motion for summary judgment using an affidavit that impeaches, without explanation, sworn testimony.") Pierre previously testified that the mold growth already was extensive when he first discovered the damage in units 2110A and B. He now avers that the mold did not appear until after the water had already caused damage to his property. Pierre has not attempted to provide

any justification for the seeming change in his prior testimony. Furthermore, he has failed to demonstrate that he has personal knowledge of whether mold or water caused the damage to his property, nor has he been designated or qualified as an expert regarding these matters. As a result, Potomac's request to strike that portion of Pierre's affidavit is granted. At least with respect to these two units, Pierre is left with no evidence that the damage to his property and the alleged loss of rental income he suffered are the result of a covered peril instead of excluded mold.[1]

In any event, summary judgment in Potomac's favor is appropriate on Pierre's claim for water and mold damage for another reason: Pierre has failed to present any competent evidence demonstrating that his damages were the result of water rather than mold. "[W]hen covered and non-covered perils combine to create a loss, the insured is entitled to recover that portion of the damages caused solely by the covered peril." *Comsys Info. Tech. Servs. Inc. v. Twin City Fire Ins. Co.*, 130 S.W. 3d 181, 198 (Tex. App.--Houston [14th Dist.] 2003, no pet.); *State Farm Fire & Cas. Co. v. Rodriguez*, 88 S.W. 3d 313, 320-21 (Tex. App.--San Antonio 2002, pet. denied). Pierre has the burden of demonstrating the amount of his damages that are

---

[1] Pierre's affidavit does not, however, directly contradict his prior testimony regarding the damage to unit 2114-E. In his prior examination under oath, Pierre testified that he learned of the damage to that unit when it "was brought to [his] attention that outside of the door of that particular space there was green algae growing. And that's where we entered the premises and were able to see that the pipe, again in the bathroom area, had burst. And once again, the water was ongoing throughout the property, causing the structural damage to the interior of the property." (Potomac's Supp. App. to Mot. to Strike at 47.) Thus, his affidavit contending that he observed water damage to that unit is not directly contradicted by his prior sworn testimony. His contention that water caused structural or other damage to that unit is, however, entirely conclusory, nor has he shown himself to be qualified to give that testimony.

attributable to the covered peril. *See Comsys*, 130 S.W. 3d at 198; *Rodriguez*, 88 S.W. 3d at 321. "Although a plaintiff is not required to establish the amount of his damages with mathematical precision, there must be some reasonable basis upon which [a] jury's finding [can] rest[]." *Rodriguez*, 88 S.W. 3d at 321. Because Pierre has presented no competent evidence tending to demonstrate the extent to which his property damage was caused by water leaks, summary judgment is appropriate. *Cf. Wallis v. USAA*, 2 S.W. 3d 300, 304 (affirming take-nothing judgment where "[t]he jury heard no testimony regarding how much of the [plaintiffs'] damage was caused by the plumbing leaks").

Pierre contends in his response to Potomac's motion to strike that Potomac has improperly attempted to place the burden on him to come forward with this evidence. As Potomac points out, however, because Pierre carries the burden of proof on this issue, Potomac's only burden in the summary-judgment context is to point out the absence of a genuine issue of fact on the issue.[2] *See Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 190 (5th Cir. 1991) ("if the moving party will not bear the burden of proof at trial . . . [he] need not produce evidence negating the existence of a material fact, but need only point out the absence of evidence supporting the nonmoving party's case"). Potomac's summary-judgment motion properly raises the issue by contending that "[a]ll [d]amages [s]ought [b]y

---

[2]And, Potomac's motion did point out that Pierre's expert concluded that the properties suffered from fungal contamination. *See* Potomac's Br. in Supp. of Mot. for Summ. J. [doc. 240] at 3 (referring to expert report of Nelson Architectural Engineers, Inc.).

[Pierre] . . . [a]re the [r]esult of [f]ungus." (Potomac's Br. in Supp. of Mot. for Summ. J. [doc. 240] at 4.) Inasmuch as Pierre has wholly failed to come forward with any competent, nonconclusory evidence demonstrating that any portion of his damages are the result of water instead of mold, summary judgment is appropriate.

Pierre contends that Potomac waived the fungus exclusion by not raising it until seeking leave to amend its answer on November 22, 2006, over three years after Pierre first filed this suit. In support of that argument, Pierre cites *Lancon v. Employers Nat'l Life Ins. Co.*, 424 S.W. 2d 321 (Tex. Civ. App.--Houston [1st Dist.] 1968, writ ref'd n.r.e.). In that case, the court stated as follows:

> "Where the company denies liability or refuses to pay a loss on a specified ground, it is estopped to assert other grounds relieving it from liability of which it had full knowledge where insured has acted on its position as announced and suffered resultant detriment, or as the rule is sometimes more broadly stated, when one specific ground of forfeiture is urged against a policy of insurance, and the validity thereof denied on that ground alone, all other grounds are waived."

*Id.* at 322-323 (quoting 45 C.J.S. Insurance § 707, p. 677). Pierre contends that because Potomac failed to raise the fungus exclusion for over five years after he submitted his claim, and because Pierre expended over $150,000 in legal fees and expenses assuming Potomac's originally stated reasons for denying coverage were the only reasons, Potomac has waived the exclusion.

Potomac contends, however, that the language quoted in *Lancon* applies only to forfeitures under an insurance policy, rather than to policy coverage. A forfeiture of a policy occurs when there is some "failure on the part of the insured to comply with some

requirement of the policy" that justifies an insurer's refusal to pay policy benefits, such as the failure to comply with a notice provision of the policy. *Minn. Mut. Life Ins. Co. v. Morse*, 487 S.W. 2d 317, 320 (Tex. 1972). Texas cases make clear that although "[w]aiver and estoppel may operate to avoid a forfeiture of a policy, . . . they have consistently been denied operative force to change, re-write and enlarge the risks covered by a policy. In other words, waiver and estoppel cannot create a new and different contract with respect to risks covered by the policy." *Texas Farmers Ins. co. v. McGuire*, 744 S.W. 2d 601, 603 (Tex. 1988); *see also Morse*, 487 S.W. 2d at 320 (Tex. 1972) ("Whereas waiver and estoppel may operate to avoid forfeiture of a policy and may prevent an insurance company from avoiding payment because of the failure on the part of the insured to comply with some requirement of the policy, waiver and estoppel cannot enlarge the risks covered by a policy and cannot be used to create a new and different contract with respect to the risk covered and the insurance extended."). The Court agrees with Potomac's interpretation of Texas law.[3]

Finally, even Pierre recognizes that the language quoted in *Lancon* requires that the insured change its position before waiver is deemed to have occurred. Pierre contends that his position changed

---

[3]Furthermore, the Court is persuaded that Potomac's failure to raise the exclusion did not constitute waiver in light of the state of Texas law regarding mold exclusions prior to the Texas Supreme Court's decision in *Fiess v. State Farm Lloyds*, 202 S.W.3d 744 (Tex. 2006). As previously mentioned, in that case, the Texas Supreme Court, answering questions certified to it by the United States Court of Appeals for the Fifth Circuit, concluded that a policy's exclusion of "mold or other fungi" was unambiguous and excluded all damages caused by mold, even where the mold resulted from water damage that was covered under the policy. Prior to that, Texas law in this area had been in conflict. *See Fiess v. State Farm Lloyds*, 392 F.3d 802, 809 & nn. 28-29 (5th Cir. 2004).

in reliance on Potomac's failure to raise the mold exclusion because he "incurred in excess of $150,000 in legal fees and legal expenses . . . [a] substantial amount of [which] relate to . . . the mold[-]damage portion of the claim." (Pierre's Resp. to Potomac's Third Mot. Summ. J. [doc. 241] at 7.) As Potomac notes, however, it has already paid Pierre in excess of $200,000 for his uncovered mold damage, an amount which Potomac is not attempting to recover. (Potomac's Br. in Supp. of Mot. Summ. J. [doc. 240] at 4.) As a result, even assuming the language quoted in *Lancon* applies, Pierre has failed to adequately demonstrate a change in his position sufficient to warrant a conclusion that Potomac waived the exclusion.[4]

It is, therefore, ORDERED that Potomac's Third Motion for Summary Judgment [document number 239] is GRANTED. Pierre shall take nothing by way of his remaining claims against Potomac.

SIGNED March 6, 2008.

_____
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE

---

[4] Because summary judgment has been granted on all of Pierre's contractual claims, and because Pierre has failed to submit evidence of any act by Potomac so extreme that it caused him injury independent of his contractual claims, summary judgment in Potomac's favor on Pierre's bad-faith claims is appropriate as well. *See Rep. Ins. Co. v. Stoker*, 903 S.W. 2d 338, 341 (Tex. 1995).